■ In the Matter of HAROLD ALI D.-E. and Another, Infants. RUBIN LOUIS E., JR., Appellant; JEWISH CHILD CARE ASSOCIATION OF NEW YORK, Respondent. [942 NYS2d 50]—

Orders of disposition, Family Court, New York County (Jane Pearl, J.), entered on or about April 29, 2011, which, insofar as appealed from, determined that appellant's consent was not required for the child Harold's adoption and that he permanently neglected and abandoned the child Rubin, terminated appellant's parental rights to Rubin, and committed custody and guardianship of the children to petitioner agency and the Commissioner of the Administration for Children's Services (ACS) for the purpose of adoption, unanimously affirmed, without costs.

The consent of appellant to the adoption of Harold was not required because appellant acknowledged that he has had no contact with and has provided no financial support for the child since 2007, and thus, he did not maintain "substantial and continuous or repeated contact with the child" (Domestic Relations Law § 111 [1] [d]; *see Matter of Marc Jaleel G. [Marc E.G.]*, 74 AD3d 689 [2010]). His incarceration does not absolve him of his responsibility for supporting the child or for maintaining regular contact (*see Matter of Javon Reginald G. [Everton Reginald G.]*, 89 AD3d 456, 457 [2011]; *Matter of Aaron P.*, 61 AD3d 448 [2009]).

The agency established that appellant had abandoned Rubin with clear and convincing evidence that appellant failed to com-

municate with Rubin or the agency during the six-month period immediately preceding the filing of a petition (*see Matter of Keyevon Justice P. [Lativia Denice P.]*, 90 AD3d 477 [2011]; *Matter of Anthony M.*, 195 AD2d 315, 315-316 [1993]). The agency also established, by clear and convincing evidence, that appellant had permanently neglected Rubin. Appellant testified that towards the end of 2009, he became aware that Rubin was in foster care after he "received letters from the courts in New York that stated [Rubin] was up for adoption," but failed to contact the agency to apprise them of his whereabouts or that he wished to become a resource for the child, thereby relieving of the agency of its due diligence obligations (*see* Social Services Law § 384-b [7] [e] [i]; *Matter of Jamie Rumbel C.*, 43 AD3d 762, 763 [2007]; *Matter of Christina Janian E.*, 260 AD2d 300, 300-301 [1999]).

The Family Court's determination that the children's best interests would be served by adoption is supported by a preponderance of the evidence (*see Matter of Star Leslie W.*, 63 NY2d 136, 147-148 [1984]). The record reveals that Harold has been residing with his foster mother for over two years, that she provides him with a nurturing environment, has been attentive to his special needs, and wishes to adopt him (*see Matter of Mykle Andrew P.*, 55 AD3d 305, 306 [2008]).

The court's determination that it was in Rubin's best interests to have appellant's parental rights terminated is supported in the record by a preponderance of the evidence (*see Matter of Roger Guerrero B.*, 56 AD3d 262, 262-263 [2008], *lv denied* 12 NY3d 704 [2009]). Appellant contends that the court erred by terminating his parental rights to Rubin because the likelihood is remote that he will be adopted due to his age, psychological issues, and steadfast desire to be reunited with his mother. However, the record shows that there is optimism that Rubin will find placement with a family that will be able to address his special needs. Indeed, the agency caseworker assigned to the case testified that once Rubin has been freed for adoption, the agency will be able to post his picture and biography with ACS and that in her experience, children who had been photo-listed with ACS found adoptive placement. Concur—Gonzalez, P.J., Tom, Catterson, Renwick and Richter, JJ.